UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CINTHIA H.,[1]

      **Plaintiff,**

v.

MICHELLE KING,
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 2:22-cv-6652
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Cinthia H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision denying, in part, those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Michelle King, the current Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

I.      PROCEDURAL HISTORY

On March 4, 2021, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since August 28, 2018. R. 87–88, 120, 229–40. The applications were denied initially and upon reconsideration. R. 125–42. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 184–98. ALJ Jack Russak held a hearing on September 24, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 53–86. In a partially favorable decision dated October 21, 2021, the ALJ found that, from Plaintiff's alleged disability onset date of August 28, 2018, through June 24, 2020, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. R. 18–32. However, the ALJ went on to find that medical improvement occurred as of June 25, 2020, and that Plaintiff' has not been disabled since that date. R. 32–39. That decision became final when the Appeals Council declined review on September 14, 2022. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 11, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[3] On August 14, 2023, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

II.     LEGAL STANDARD

A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

5

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

  **B.**  **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.  ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023. R. 22. She was a younger individual (age 18–44) on August 28, 2018, her established disability onset date. R. 32. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 22.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical and lumbar radiculopathy, bilateral shoulder SLAP lesions and derangement status post right shoulder arthroscopy, post-traumatic stress disorder, major depressive disorder, post-concussion syndrome, and attention-deficit hyperactivity disorder. *Id*. The ALJ also found that Plaintiff's obesity was not severe and that "findings suggested of active demyelinating disease" were not medically determinable. R. 23.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 23–26.

7

At step four, the ALJ found that, from August 28, 2018, through June 24, 2020, Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 26–31. The ALJ also found that, during that period, this RFC did not permit the performance of Plaintiff's past relevant work as a driver, facilities manager, school bus monitor, or babysitter. R. 31.

At step five, the ALJ found that, from August 28, 2018, through June 24, 2020, and considering Plaintiff's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. R. 32–33. The ALJ therefore concluded that Plaintiff was under a disability, as defined by the Social Security Act, from August 28, 2018, through June 24, 2020. R. 33.

However, the ALJ went on to consider whether Plaintiff remained disabled beginning on June 25, 2020. R. 33–39. The ALJ found that Plaintiff had not developed any new impairment or impairments since that date. R. 33. Thus, Plaintiff's severe impairments were the same as those present during the period of disability, *i.e.,* August 28, 2018, through June 24, 2020. *Id*.

The ALJ also found that medical improvement occurred as of June 25, 2020, the date on which Plaintiff's disability ended. *Id*. The ALJ further found that this medical improvement resulted in an increase in Plaintiff's RFC. *Id*.

At step four, the ALJ found that, beginning June 25, 2020, Plaintiff had the RFC to perform a limited range of sedentary work, and that this RFC did not permit the performance of Plaintiff's past relevant work as a driver, facilities manager, school bus monitor, or babysitter. subject to various exertional and non-exertional limitations. R. 33–37.

At step five and relying on the testimony of the vocational expert, the ALJ found that, beginning June 25, 2020, a significant number of jobs—*e.g.*, jobs as an order clerk, an information clerk, and an electronic assembler—existed in the national economy and could be

performed by Plaintiff. R. 38–39. The ALJ therefore concluded that Plaintiff's disability ended on June 25, 2020, and that Plaintiff had not become disabled again since that date. R. 39.

Plaintiff disagrees with the ALJ's findings at steps four and five (addressing the period beginning June 25, 2020)[4] and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 12. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 11.

IV.  **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

    A.  **Pooja Tandon, M.D.**

On September 29, 2021, Pooja Tandon, M.D., Plaintiff's treating psychiatrist, completed a two-page, check-the-box, and fill-in-the-blank form entitled, "Medical Assessment of Ability to Do Work Related Activities (Mental)." R. 958–59. Dr. Tandon evaluated Plaintiff's ability to perform work-related activities using the following scale: "Unlimited or Very Good" (meaning the "ability to function in this area is more than satisfactory"); "Good" (meaning the "ability to function in this area is limited but satisfactory"); "Fair" (meaning the "ability to function in this area is seriously limited, but not precluded"); and "Poor or None" (meaning there is "[n]o useful ability to function in this area"). R. 958. Addressing occupational adjustments, Dr. Tandon opined that Plaintiff had an unlimited/very good ability to function independently; a fair ability

---

[4] Plaintiff does not challenge the finding of disability from August 28, 2018, through June 24, 2020. *Plaintiff's Memorandum of Law*, ECF No. 8, p. 14 n.1 (confirming that "[t]he period at issue is from June 25, 2020, through the date of the ALJ's decision, October 21, 2021"); *Plaintiff's Reply Brief*, ECF No. 12, p. 3 n.1 (same).

to relate to co-workers, use judgment, interact with supervisors, and maintain attention/concentration; and poor or no ability to follow work rules, deal with the public, or deal with work stresses. *Id*. Dr. Tandon did not "[d]escribe any limitations [or] include the medical/clinical findings that support this assessment." *Id*. According to Dr. Tandon, Plaintiff had a fair ability to understand, remember, and carry out complex and simple job instructions, but a poor or no ability to understand detailed but not complex job instructions. R. 959. Again, Dr. Tandon did not "[d]escribe any limitations [or] include the medical/clinical findings that support this assessment, e.g., intellectual ability, though organization, memory, comprehension, etc." *Id*. Dr. Tandon opined that Plaintiff had an unlimited/very good ability to maintain personal appearance and a fair ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. *Id*. Dr. Tandon again did not describe these limitations nor did she refer to medical/clinical findings to support her assessment. *Id*. Dr. Tandon did not respond to a question asking her to state "any other work-related activities which are affected by the impairments, and indicate how the activities are affected. What are the medical/clinical findings that support this assessment". *Id*. According to Dr. Tandon, these limitations have been present since August 16, 2019. *Id*.

  B.  **Paulette Sabol, Ph.D.**

  On August 19, 2020, Paulette Sabol, Ph.D., conducted a consultative psychological examination of Plaintiff. R. 665–67, Exhibit 3F/2–4. Plaintiff reported that she resides with her fourteen-year-old son; her seventeen-year-old daughter resides with Plaintiff's mother. R. 665. Plaintiff reported symptoms of traumatic stress and panic attacks resulting from an August 28, 2018, motor vehicle accident. *Id*. Plaintiff had no history of inpatient psychiatric treatment, but had been seeing a psychiatrist for two years after the accident. R. 666. Upon mental status

examination, Dr. Sabol reported as follows:

> Upon examination the claimant was friendly and cooperative. She appeared her stated age of 37. She stood 5'1" and weighed 150 pounds. She was dressed casually and appropriately for the examination in a long-sleeved t-shirt and leggings. Her hygiene and grooming were fine. She made good eye contact. Her gait and posture were normal. Her motor behavior was normal. Her thought processes were logical, coherent, and goal directed. Her speech was appropriate. No perceptual disturbances were noted during the evaluation. She was wearing a KN95 face mask and her affect was appropriate. Her mood was anxious. She was oriented x3, she thought the date was 8/14. *She was able to understand and carry out simple directions* ("Open your mouth, touch your nose, and close your eyes.") *Her recent and remote memory skills were impaired possibly because of traumatic stress. She was able to recall 3/3 objects immediately, but only 1/3 objects after several minutes. Her attention and concentration were impaired possibly because of attentional difficulties.* She was able to recall and repeat three and five digits forwards, but not four digits. She was only able to recall and repeat two and three digits backward but not four. She was able to spell the word *world* forwards but not backward correctly. She was able to correctly answer 5+3, 15+7, 31-8, and 39/3. However, she incorrectly answered 5x13. Her abstract reasoning skills were adequate. She stated that both a rose and a tulip are flowers and that a bicycle and a train are used for transportation, and that a watch and a ruler are used for measurement. She was able to name the current president, the past president, but erroneously thought that the president before Mr. Obama was Mr. Clinton. If she were the first person in a crowded movie theater to notice a fire, she would scream and freak out. If she found a sealed, addressed envelope with a stamp on it she would put it in the mailbox. Her intellectual functioning is estimated to be in the average range. Her insight is good, and her judgment is fair. Her general fund of information is beneath expectation.

R. 666–67 (emphasis added). Dr. Sabol went on to explain Plaintiff's current functioning:

> The claimant can dress, bathe, and groom herself slowly and painfully because of her shoulder issues. She has difficulty washing and combing her hair. She can use an iPhone. She can cook simple meals and noted that she is vegan. She needs her son's assistance to go grocery shopping or to do heavy lifting when she is washing clothes. She reports difficulty with money management because she forgets to pay bills and has problems staying within her budget. She can go out by herself, but mostly stays at home. She spends her day meditating and homeschooling her son.

R. 667. Dr. Sabol diagnosed Plaintiff with "PTSD, Chronic with Panic Attacks, Major Depressive Disorder, Recurrent Moderate with Anxious Distress, and ADHD, the Combine Type." *Id*. Plaintiff's prognosis was guarded: "she has multiple, chronic mental health issues."

*Id.*

## V.     DISCUSSION

In the case presently before the Court, the ALJ determined that, beginning on June 25, 2020, Plaintiff's mental impairments had remained unchanged but that her musculoskeletal impairments affecting the use of her arms had improved with treatment, R. 34, leaving her with the RFC to perform a limited range of sedentary work:[5]

> After careful consideration of the entire record, the undersigned finds that, beginning June 25, 2020, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant could occasionally push/pull with her bilateral upper extremities and could never operate foot controls with her bilateral lower extremities. She could occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. The claimant could occasionally stoop, crouch, or kneel, but never crawl. She can never balance on narrow, slippery, or erratically moving surfaces. The claimant must avoid all exposure to heavy industrial or moving machinery, unprotected heights, vibrations or driving vehicles. She can frequently move her neck from side to side or up to down. The claimant can never reach overhead with her bilateral upper extremities, but can otherwise frequently reach and handle objects (gross manipulation) as well as finger and feel (fine manipulation) with her bilateral upper extremities. In addition, the claimant can perform a low-stress job, defined as having occasional decision making required and occasional changes in the work setting, and work requiring occasional judgment on the job.

R. 33. In reaching this determination, the ALJ found Dr. Tandon's opinion unpersuasive, explaining as follows:

> The undersigned has again considered the opinion of treating psychiatrist Pooja Tandon, M.D., in a medical questionnaire, dated September 29, 2021, in which Dr. Tandon opined that the claimant had "poor or none" ability to follow work rules, deal with the public, deal with work stresses, understand, remember or carry out detailed instructions (but a "fair" ability to understand remember and carry out complex job instructions,) and "fair" ability to function in most other areas indicated on the form (Ex. 14F). The undersigned again does not find this opinion persuasive because it is not consistent with or supported by the claimant's longitudinal psychological and neurological treatment records since her June 25, 2020, clinical observations of the claimant therein, the claimant's level of treatment which has consisted solely of outpatient therapy and prescribed medication only,

---

[5] Any subsequent reference to "RFC" refers to the RFC beginning on June 25, 2020. R. 33.

>and the claimant's reported activities, including claimant's continuing full-time college level course work since June 25, 2020 (Ex. 2F/67-8, 3F, 8F, 11F/15, 11F/24, 11F/29, 12F, and Claimant Testimony).

R. 36 – 37.

Plaintiff argues that substantial evidence does not support this RFC determination because the ALJ failed to properly consider Dr. Tandon's opinion. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 13–21; *Plaintiff's Reply Brief*, ECF No. 12, pp. 1–6. For the reasons that follow, this Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, for claims filed after March 27, 2017,[6] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent

---

[6] As previously noted, Plaintiff's claims were filed on March 4, 2021.

14

a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

In challenging Plaintiff's RFC beginning on June 25, 2020, Plaintiff argues that the ALJ failed to properly consider Dr. Tandon's opinion, contending that the ALJ failed to explain how the evidence is inconsistent with or fails to support this physician's opinion. *Plaintiff's Memorandum of Law*, ECF No. 8, pp. 13–21; *Plaintiff's Reply Brief*, ECF No. 12, pp. 1–6. Plaintiff specifically argues, *inter alia*, that the ALJ never explained why Dr. Sabol's consultative examination was inconsistent with Dr. Tandon's opinion. *Plaintiff's Memorandum of Law*, ECF No. 8, p. 20. Indeed, Plaintiff complains, the ALJ failed to even discuss Dr. Sabol's findings that Plaintiff's recent and remote memory skills as well as her attention and concentration were impaired. *Id*. (R. 34–37, 667). Plaintiff takes the position that the ALJ's

15

omission in this regard is not harmless because Dr. Tandon's opined limitations, if accepted, would conflict with the three jobs that the vocational expert identified—order clerk, information clerk, and electronic assembler—and upon which the ALJ ultimately relied. *Id*. at 21. In response, the Acting Commissioner generally argues that the "ALJ discussed that Dr. Tandon's opinion was unsupported and inconsistent[,]" but the Acting Commissioner does not specifically address the ALJ's failure to discuss Dr. Sabol's findings when assessing the consistency of Dr. Tandon's opinion. *Defendant's Brief*, ECF No. 11, p. 10 (citing R. 31), 12.

      The ALJ's omission in this regard requires remand. As detailed above, Dr. Sabol found, *inter alia*, that Plaintiff "was able to understand and simple directions[,]" and that Plaintiff's "recent and remote memory skills were impaired" as were her attention and concentration. R. 666–67, Exhibit 3F/3–4. The ALJ never discussed this consultative examiner's findings in the opinion. R. 18–39.[7] The ALJ did cite to Dr. Sabol's consultative examination, Exhibit 3F, in finding that Dr. Tandon's opinion "is not consistent with or supported by the claimant's longitudinal psychological and neurological treatment records since [] June 25, 2020," but the ALJ did not explain why Dr. Sabol's findings were inconsistent with Dr. Tandon's opined limitations. R. 36–37 (citing, *inter alia*, Exhibit 3F). The ALJ's conclusion—with no explanation—that Dr. Tandon's opinion is inconsistent with, *inter alia*, Dr. Sabol's finding therefore does not allow this Court to understand and assess the basis for the ALJ's finding that Dr. Tandon's opinion was "not consistent with . . . the claimant's longitudinal psychological and neurological treatment records since [] June 25, 2020[.]" R. 37; *see also* 20 C.F.R. §§ 404.1520c(b)(2), (c)(2), 416.920c(b)(2), (c)(2); *DePalma v. Kijakazi*, No. 1:22-CV-475, 2023

---

[7] The ALJ also briefly cited to Exhibit 3F when discussing the state agency reviewing consultants' opinions but, again, provided no separate discussion of those findings. R. 36.

WL 2870711, at *11–12 (M.D. Pa. Apr. 10, 2023) (finding that "more is needed by way of an explanation" where "the ALJ stated in a conclusory fashion that these [medical] opinions were not consistent with the overall medical evidence of record" and "did not explain how these opinions, which appear largely consistent with each other regarding these limitations, were inconsistent with the medical record evidence. Rather, we are left to speculate regarding how the ALJ came to this RFC determination, which evidence he relied on, and the reasons that he rejected these medical opinions"); *Bruce T. v. Kijakazi*, No. CV 21-20289, 2022 WL 10025372, at *6–7 (D.N.J. Oct. 17, 2022) (finding that the ALJ's reasons for discounting opinion evidence "are not adequately explained" and remanding for further proceedings); *Brownsberger v. Kizakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *6–7 (M.D. Pa. Jan. 18, 2022) (finding that substantial evidence did not support the ALJ's assessment of medical opinions where the ALJ "makes no effort to compare or support their opinions with the record. . . . The ALJ does not provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors"). Fundamentally, the ALJ's failure to adequately explain how he considered the consistency factor in his evaluation of Dr. Tandon's opinion frustrates this Court's ability to determine whether substantial evidence supports that evaluation and, ultimately, the ALJ's disability determination.

      This Court therefore concludes that remand of the matter for further consideration is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of the evidence and consideration of the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at

---

[8] Plaintiff asserts other errors in the final decision. Because the Court concludes that the matter must be remanded for further consideration of the RFC and Dr. Tandon's opinion, the Court does not consider those assertions.

\*8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at \*4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at \*10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  February 11, 2025                    *s/Norah McCann King*
                                             NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE